IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHINA LONON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-037 |
| | ) | |
| WARDEN JERMAIN WHITE; | ) | |
| DEPUTY WARDEN OF SECURITY | ) | |
| VERONICA STEWART; | ) | |
| UNIT MANAGER DENISHA BELLAMY; | ) | |
| CAPTAIN FULLER; SERGEANT | ) | |
| ROBINSON; OFFICER POPE; and | ) | |
| OFFICER MITCHELL, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, imprisoned at Telfair State Prison in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

## I.   SCREENING THE COMPLAINT

### A.   BACKGROUND

Plaintiff names the following Defendants: (1) Warden Jermain White, (2) Deputy Warden of Security Veronica Stewart, (3) Unit Manager Denisha Bellamy, (4) Captain Fuller, (5) Sergeant Robinson, (6) Officer Pope, and (7) Officer Mitchell. (Doc. no. 1, pp. 1, 4.) Taking all of

Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On December 25, 2021, Plaintiff tied a sheet to the rail in the "Top Range" of Area C2 in Telfair State Prison.  (Id. at 5.)  Defendant Pope and Defendant Mitchell witnessed Plaintiff's actions.  (Id.)  Defendant Pope threatened to spray Plaintiff with Oleoresin capsicum ("OC spray") while Defendant Mitchell instructed Plaintiff to "get down."  (Id.)  Plaintiff tied the sheet around his neck and hung himself from the rail in the presence of Defendants Pope and Mitchell.  (Id.)  Neither Defendant Pope nor Defendant Mitchell attempted to remove the sheet from around Plaintiff's neck.  (Id.)   At an unknown point, other inmates began to "use force" on Plaintiff as he hung from the rail.  (Id.)  Plaintiff was allegedly visible to prison staff from the CCTV camera.  (Id.)  None of the present prison employees, including Unit Manager Bells, Defendant Pope, and Defendant Mitchell intervened in the inmate attack on Plaintiff as he hung from the rail.  (Id.)  Plaintiff wrote two grievances.  (Id.)

On January 24, 2022, Plaintiff was sent from "Dining Hall # 1" to intake to have his beard shaved.  (Id.)  After Plaintiff's beard was shaved, Defendant Stewart approached Plaintiff with OC spray and instructed Plaintiff to remove his kufi cap.  (Id. at 5, 7.)  Plaintiff told Defendant Stewart, "You know you got to have a camera to spray me."  (Id. at 7.)  Defendant Stewart directed the other present inmates outside or to the lower intake area, leaving Plaintiff alone with Defendant Stewart and Defendant Bellamy.  (Id.)  After the other inmates dispersed from the area, Defendant Bellamy whispered into Defendant Stewart's ear.  (Id.)  Defendant Stewart then stated, "Here go my camera," and sprayed Plaintiff with OC spray repeatedly after Plaintiff removed his kufi cap and displayed no signs of aggression.  (Id.)  Plaintiff was then taken to Area E2 for a haircut.  (Id.)  After Plaintiff's haircut, Defendant Stewart falsely informed Defendant White that she sprayed

Plaintiff with OC spray because he took off his clothes and tried to take a shower in front of everyone.  (Id.)  Defendant White instructed the "tacti squad" to escort Plaintiff to the "E. Building" where Plaintiff was ordered to remain for sixty days.  (Id.)  Per Defendant White's orders, the tacti squad escorted Plaintiff to E1 Top Range Cell #206 ("Cell #206") where Plaintiff remained for 51 days.  (Id.)

The following day, Plaintiff experienced a severe allergic reaction from the OC spray.  (Id.) Nurse Tilman administered two shots in Plaintiff's left and right shoulders to treat the allergic reaction.  (Id.)  On January 28, 2022, Plaintiff received two additional shots through the door flap of his cell for his continued allergic reaction to the OC spray used upon him on January 24, 2022. (Id.)

At an unclear point, Plaintiff filed a grievance after being sprayed with OC spray while having COVID-19.  (Id. at 8.)  On February 18, 2022, Defendant Robinson and Defendant Pope entered Cell #206 to escort Plaintiff's cellmate to intake per Unit Manager Thomas' orders.  (Id.) After they placed handcuffs on Plaintiff's cellmate, Defendant Robinson threatened to spray Plaintiff with OC spray with alleged knowledge of Plaintiff's recent allergic reactions to the spray. (Id.)  Plaintiff persistently told Defendant Robinson to put the spray away.  (Id.)  Defendant Robinson left the cell but later returned.  (Id.)  Defendant Robinson entered Plaintiff's cell and stated, "I came in there with no handcuffs on you."  (Id.)  She pointed the OC spray at Plaintiff, but she eventually left the cell without spraying Plaintiff.  (Id.)

Plaintiff's family contacted the ombudsman in approximately February 2022. (Id. at 4, 7.) On February 23, 2022, Plaintiff returned from the yard to Cell #206 and found Defendant Fuller and Lieutenant Kellom waiting outside of his cell.  (Id.)  As Defendant Pope escorted Plaintiff inside of the cell, Defendant Fuller grabbed Plaintiff and began patting him down for a search.

(Id.)  During the search, Defendant Fuller grabbed Plaintiff's penis.  (Id.)  Plaintiff exclaimed, "PREA!" and informed Defendant Pope, "[Defendant Fuller] just grabbed my penis." (Id.) Defendant Fuller denied grabbing Plaintiff's penis and pushed Plaintiff into E1 Top Range Cell #207 ("Cell #207") where he grabbed Plaintiff's penis two more times during the continued pat search in front of another inmate.  (Id. at 7-8.)  The inmate in Cell #207 asked Defendant Fuller, "What are you doing to [Plaintiff]?"  (Id. at 8.)  Defendant Fuller escorted Plaintiff back into Cell #206 and removed his handcuffs.  (Id.)  When Officer Jones delivered a dinner tray to Plaintiff, Plaintiff told Jones he would like to report a Prison Rape Elimination Act ("PREA") incident.  (Id.) Jones informed Unit Manager Thomas of Plaintiff's request, and Thomas escorted Plaintiff to the medical unit.  (Id.)  Plaintiff met with Physician's Assistant Murray and Unit Manager Hunt and wrote a statement regarding the PREA incident.  (Id.)

Plaintiff asks for punitive and compensatory damages in the amount of $130,000.  (Id. at 6.)  Plaintiff also asks that the individuals involved in his claims be fired. (Id.)

## B.   DISCUSSION

### 1.   Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## 2.   Plaintiff fails to State a Claim Against Defendant Warden White

Plaintiff fails to state a claim against Defendant Warden White for supervisory liability. The Eleventh Circuit has held a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations

5

that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")

Although Plaintiff also alleges that Warden ordered Plaintiff's placement into Tier I segregation, Plaintiff failed to allege facts sufficient to state a Due Process claim. (Doc. No. 1, p. 8.) In the absence of Warden White's direct involvement in other events described within Plaintiff's complaint, Warden White cannot be held liable merely in light of his supervisory position. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of respondeat superior. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on respondeat superior theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendant White liable, Plaintiff must demonstrate that he (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff has failed to allege facts that

establish Defendant White was present for, or participated in, a constitutional violation. Therefore, Plaintiff must allege a causal connection between Warden Bobbitt and the asserted constitutional violations.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).

The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Brown, 906 F.2d at 671.  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection.  Plaintiff has not alleged (1) a history of widespread abuse regarding inmate-on-inmate violence at Telfair State Prison, (2) an improper custom or policy put in place by Warden White regarding the same, or (3) an inference Warden White directed others to act, or knew they would act, unlawfully.  In sum, Plaintiff has not shown Warden White actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against Warden White.

7

### 3.   Plaintiff Fails to State a Claim Against Defendants Pope and Mitchell

Plaintiff fails to state a claim against Defendants Pope and Mitchell for damages.  Plaintiff asserts that Defendants Pope and Mitchell failed to remove the sheet from around Plaintiff's neck as he hung from the rail.  (Doc. no. 1, p. 5.)  Plaintiff also asserts that Defendants Pope and Mitchell, along with Unit Manager Bells who is not a named defendant in this suit, "stood downstairs watching the CCTV camera watching as the inmates used force on [Plaintiff]" while Plaintiff hung from the rail.  (Id.)

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted).  Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates.  Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (per curiam); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981).  When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment imposes a duty to provide reasonable protection.  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam).  However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured.  It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials."  Gullatte, 654 F.2d at 1012.  "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment.  Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

"Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate-on-inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer, 511 U.S. at 833-34). "An excessive risk of inmate-on-inmate violence creates a substantial risk of serious harm, but occasional, isolated attacks by one prisoner on another may not constitute an Eighth Amendment violation." Oliver v. Harden, 587 F. App'x 618, 620 (11th Cir. 2014). To establish an Eighth Amendment claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).

As the Eleventh Circuit explained,

When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

Mere negligent failure to protect an inmate from an attack does not justify § 1983 liability. Brown, 894 F.2d at 1537. Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; see also Adams v. Poag,

61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith."). "

First, while Plaintiff states that Defendants Pope and Mitchell did not attempt to remove the sheet from around Plaintiff's neck, both Defendants acted deliberately to encourage Plaintiff to cease from his dangerous actions.  (Doc. no. 1, p. 5.)  Upon observing Plaintiff hang from the rail, Defendant Mitchell instructed Plaintiff to "get down" and Defendant Pope threatened to spray Plaintiff with OC spray if he did not desist from his actions.  (Id.)  The alleged facts show Defendants Pope and Mitchell deliberately acted to encourage Plaintiff to remove himself from a dangerous situation.  (Id.)  Therefore, Plaintiff fails to establish a claim of deliberate indifference against Defendants Pope and Mitchell in regard to any safety risk Plaintiff suffered as a "mental health patient." (Id.)

As a result of Plaintiff's disregard of the Defendants' instructions to "get down" from the rail, Plaintiff was attacked by other inmates as he hung from the rail.  (Id.)  Plaintiff alleges that Unit Manager Bells, who is not a named defendant in this lawsuit, "stood downstairs with the CCTV camera watching the inmates use force on [Plaintiff] as well as [Defendant Pope] and [Defendant Mitchell]. (Id.)  Plaintiff does not allege any other instances of inmate-on-inmate violence against him at Telfair State Prison in his complaint, nor does he allege the Defendants had any reason to know the attack would occur.  (Id.)  It appears that the inmate-on-inmate attack on Plaintiff was an isolated attack, and therefore may not constitute an Eighth Amendment violation as a result of Defendants' failure to prevent the attack.  Since these facts fail to demonstrate that Defendants consciously disregarded a serious and imminent risk toward Plaintiff or a conscious or callous indifference to Plaintiff's rights, Plaintiff has failed

to state a claim against Defendants Pope and Mitchell.

### 4.  Plaintiff's Due Process Violation Claim Based on His Placement into Tier I Housing

Plaintiff asserts his placement in Tier I segregation was a violation of his Due Process. Section 1983 claims for denial of procedural due process require three elements: "(1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." Quintanilla v. Bryson, 730 F. App'x 738, 743 (11th Circ. 2018) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).  Plaintiff clearly establishes state action, thus the Court turns to the remaining two elements.

Prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison."  Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008); see also Meachum v. Fano, 427 U.S. 215, 223-24 (1976) (finding no liberty interest in transfer to less agreeable prison).  However, there are two instances in which a prisoner may claim a protected liberty interest has been violated by placement in punitive segregation:  the placement (1) "will inevitably affect the duration of his sentence"; or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484, 486 (1995).

"It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."  Al-Amin, 165 F. App'x at 738-39 (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983), modified on other grounds, Sandin, 515 U.S. at 481)); see also Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991) (stating Due Process Clause does not "create 'an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation

quarters.'" (citation omitted)).  Thus, the Court must consider whether a deprivation of in-prison benefits "impose[s] atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life."  Hill v. Sellars, No. 5:15-CV-00453, 2016 WL 7972197, at *5 (M.D. Ga. Nov. 17, 2016) (citing Sandin, 515 U.S. at 484 and Wilkinson v. Austin, 545 U.S. 209, 223 (2005)), adopted by, 2017 WL 343638 (M.D. Ga. Jan. 23, 2017).

To meet this pleading requirement, Plaintiff "must state or allege facts to show an 'atypical and significant hardship.'"  Gilyard v. McLaughlin, No. 5:14-CV-185, 2015 WL 1019910, at *7 (M.D. Ga. Mar. 9, 2015).  Stated otherwise, for the Court to determine whether the state has created a protected liberty interest, Plaintiff must allege sufficient facts about the "ordinary incidents of prison life" and the conditions of confinement he experiences to state a plausible claim for relief. See Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013); Hill, 2016 WL 7972197, at *5.

Plaintiff has not provided any information about conditions of confinement in Tier I, let alone how those conditions pose an "atypical and significant hardship" on him.  In fact, the conditions about which Plaintiff complains concern his general population unit, not his Tier I placement.  (Doc. no. 1, p. 8.)  Plaintiff only alleges he was placed in Tier I and does not mention how those conditions differ from general population or affect the duration of his sentence. (Id.) Therefore, Plaintiff fails to state a procedural Due Process claim against any Defendant for being placed in Tier I.

### 5. Plaintiff's Retaliation Claim Based on his Family Contacting the Ombudsman

Plaintiff alleges that his family contacted the ombudsman sometime around February 2022 after Plaintiff was sprayed with OC spray.  (Doc. no. 1, pp. 4, 7.)  In his complaint, Plaintiff claims Defendant Fuller "grabbed" his genitals three times during a pat-down search "in 'retaliation' to

[Plaintiff's] family contacting ombudsman on 2/23/2022." (Id. at 8.)  To prevail on a retaliation claim, Plaintiff must establish that: (1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance].  O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation and quotation marks omitted).  "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).  However, "[t]o establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains." Smith v. Villapando, 286 F. App'x 682, 685 (11th Cir. 2008).

Here, Plaintiff claims his genitals were grabbed three times during a pat-down search in retaliation for his family contacting the ombudsman on his behalf.  (Doc. no. 1, pp. 4, 7.)  Plaintiff's conclusory allegation that certain conduct was retaliatory, without more, is insufficient to state a valid claim.

Nor does the isolated contact with Plaintiff's genitals during a pat down claim state an Eight Amendment violation.  Morton v. Walker, 545 F. App'x 856, 860 (11th Cir.2013) ("To prove an Eighth Amendment violation based on sexual abuse, a prisoner must show that he suffered an injury that was objectively and sufficiently serious and that the prison official had a subjectively culpable state of mind.") (citing Boxer X. v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006); See also Sherwood v. Schofield, Case No. 2:12–cv–50, 2013 WL 3943542 at *5 (E.D.Tenn. July 30, 2013) (groping of genitals during one, routine pat-down search is

insufficient to state claim); <u>Young v. Brock</u>, Case No. 10–cv–01513–WJM–CBS, 2012 WL 385494, at *4 (D. Colo. Feb.7, 2012) (where officer allegedly fondled and squeezed inmate's genitals during pat-down search, "caselaw is clear that such a single pat-down search cannot be said to violate the Constitution") (citing similar cases); <u>Tuttle v. Carroll Co. Det. Ctr.</u>, Case No. 2:10–12–DCR, 2010 WL 2228347, at *2 (E.D. Ky. June 2, 2010) (inmate's privacy and dignity were not violated when officer grabbed and squeezed his testicles during single pat-down search).

### 6. Plaintiff Fails to State a Claim for Excessive Force Against Defendants Bellamy and Robinson

Plaintiff fails to state a viable claim for excessive force against Defendants Bellamy and Robinson.  To establish a claim for excessive force, a plaintiff must show (1) the defendants acted with a malicious and sadistic purpose to inflict harm—the subjective prong—and (2) more than a *de minimis* injury resulted—the objective prong.  <u>Johnson v. Breeden</u>, 280 F.3d 1308, 1321 (11th Cir. 2002).

Here, even assuming Defendants Bellamy and Robinson satisfied the subjective prong, Plaintiff fails to allege any facts showing more than a *de minimis* injury.  Plaintiff claims no injury resulting from the actions of Defendants Bellamy or Robinson.  Rather Plaintiff alleges Defendant Bellamy was present when Defendant Stewart sprayed him with OC spray, while Plaintiff states Defendant Robinson pointed OC spray but then left his cell.  Neither of these actions caused Plaintiff an demonstrable injury.  Accordingly, Plaintiff fails to state a claim for relief for use of excessive force against Defendants Bellamy and Robinson.

### 7. Official Capacity Monetary Damages

Plaintiff is suing Defendants in their individual and official capacities.  However, the

Eleventh Amendment bars official capacity claims against state prison officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

## II.   CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be granted against Defendants White, Fuller, Pope, Bellamy, Robinson, and Mitchell. Therefore, and the Court **REPORTS** and **RECOMMENDS** Defendants White, Fuller, Pope, Bellamy, Robinson, and Mitchell, along with Plaintiff's official capacity claims for money damages against Defendant Stewart be dismissed from the case. By separate Order, the Court directs service of process on Defendant Stewart.

SO REPORTED and RECOMMENDED this 22nd day of July, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA