IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CHINA LONON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-037 |
| | ) | |
| WARDEN JERMAIN WHITE; | ) | |
| DEPUTY WARDEN OF SECURITY | ) | |
| VERONICA STEWART; | ) | |
| UNIT MANAGER DENISHA BELLAMY; | ) | |
| CAPTAIN FULLER; SERGEANT | ) | |
| ROBINSON; OFFICER POPE; and | ) | |
| OFFICER MITCHELL, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff, imprisoned at Telfair State Prison in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.     BACKGROUND**

Plaintiff names the following Defendants: (1) Warden Jermain White, (2) Deputy Warden of Security Veronica Stewart, (3) Unit Manager Denisha Bellamy, (4) Captain Fuller, (5) Sergeant Robinson, (6) Officer Pope, and (7) Officer Mitchell. (Doc. no. 1, pp. 1, 4.)  Taking all of

Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On December 25, 2021, Plaintiff tied a sheet to the rail in the "Top Range" of Area C2 in Telfair State Prison. (Id. at 5.) Defendant Pope and Defendant Mitchell witnessed Plaintiff's actions. (Id.) Defendant Pope threatened to spray Plaintiff with Oleoresin capsicum ("OC spray") while Defendant Mitchell instructed Plaintiff to "get down." (Id.) Plaintiff tied the sheet around his neck and hung himself from the rail in the presence of Defendants Pope and Mitchell. (Id.) Neither Defendant Pope nor Defendant Mitchell attempted to remove the sheet from around Plaintiff's neck. (Id.) At an unknown point, other inmates began to "use force" on Plaintiff as he hung from the rail. (Id.) Plaintiff was allegedly visible to prison staff from the CCTV camera. (Id.) None of the present prison employees, including Unit Manager Bells, Defendant Pope, and Defendant Mitchell intervened in the inmate attack on Plaintiff as he hung from the rail. (Id.) Plaintiff wrote two grievances. (Id.)

On January 24, 2022, Plaintiff was sent from "Dining Hall # 1" to intake to have his beard shaved. (Id.) After Plaintiff's beard was shaved, Defendant Stewart approached Plaintiff with OC spray and instructed Plaintiff to remove his kufi cap. (Id. at 5, 7.) Plaintiff told Defendant Stewart, "You know you got to have a camera to spray me." (Id. at 7.) Defendant Stewart directed the other present inmates outside or to the lower intake area, leaving Plaintiff alone with Defendant Stewart and Defendant Bellamy. (Id.) After the other inmates dispersed from the area, Defendant Bellamy whispered into Defendant Stewart's ear. (Id.) Defendant Stewart then stated, "Here go my camera," and sprayed Plaintiff with OC spray repeatedly after Plaintiff removed his kufi cap and displayed no signs of aggression. (Id.) Plaintiff was then taken to Area E2 for a haircut. (Id.) After Plaintiff's haircut, Defendant Stewart falsely informed Defendant White that she sprayed

Plaintiff with OC spray because he took off his clothes and tried to take a shower in front of everyone. (Id.) Defendant White instructed the "tacti squad" to escort Plaintiff to the "E. Building" where Plaintiff was ordered to remain for sixty days. (Id.) Per Defendant White's orders, the tacti squad escorted Plaintiff to E1 Top Range Cell #206 ("Cell #206") where Plaintiff remained for 51 days. (Id.)

The following day, Plaintiff experienced a severe allergic reaction from the OC spray. (Id.) Nurse Tilman administered two shots in Plaintiff's left and right shoulders to treat the allergic reaction. (Id.) On January 28, 2022, Plaintiff received two additional shots through the door flap of his cell for his continued allergic reaction to the OC spray used upon him on January 24, 2022. (Id.)

At an unclear point, Plaintiff filed a grievance after being sprayed with OC spray while having COVID-19. (Id. at 8.) On February 18, 2022, Defendant Robinson and Defendant Pope entered Cell #206 to escort Plaintiff's cellmate to intake per Unit Manager Thomas' orders. (Id.) After they placed handcuffs on Plaintiff's cellmate, Defendant Robinson threatened to spray Plaintiff with OC spray with alleged knowledge of Plaintiff's recent allergic reactions to the spray. (Id.) Plaintiff persistently told Defendant Robinson to put the spray away. (Id.) Defendant Robinson left the cell but later returned. (Id.) Defendant Robinson entered Plaintiff's cell and stated, "I came in there with no handcuffs on you." (Id.) She pointed the OC spray at Plaintiff, but she eventually left the cell without spraying Plaintiff. (Id.)

Plaintiff's family contacted the ombudsman in approximately February 2022. (Id. at 4, 7.) On February 23, 2022, Plaintiff returned from the yard to Cell #206 and found Defendant Fuller and Lieutenant Kellom waiting outside of his cell. (Id.) As Defendant Pope escorted Plaintiff inside of the cell, Defendant Fuller grabbed Plaintiff and began patting him down for a search.

3

(Id.)  During the search, Defendant Fuller grabbed Plaintiff's penis.  (Id.)  Plaintiff exclaimed, "PREA!" and informed Defendant Pope, "[Defendant Fuller] just grabbed my penis." (Id.) Defendant Fuller denied grabbing Plaintiff's penis and pushed Plaintiff into E1 Top Range Cell #207 ("Cell #207") where he grabbed Plaintiff's penis two more times during the continued pat search in front of another inmate.  (Id. at 7-8.)  The inmate in Cell #207 asked Defendant Fuller, "What are you doing to [Plaintiff]?"  (Id. at 8.)  Defendant Fuller escorted Plaintiff back into Cell #206 and removed his handcuffs.  (Id.)  When Officer Jones delivered a dinner tray to Plaintiff, Plaintiff told Jones he would like to report a Prison Rape Elimination Act ("PREA") incident.  (Id.) Jones informed Unit Manager Thomas of Plaintiff's request, and Thomas escorted Plaintiff to the medical unit.  (Id.)  Plaintiff met with Physician's Assistant Murray and Unit Manager Hunt and wrote a statement regarding the PREA incident.  (Id.)

Plaintiff asks for punitive and compensatory damages in the amount of $130,000.  (Id. at 6.)  Plaintiff also asks that the individuals involved in his claims be fired. (Id.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has *arguably* stated a viable excessive force claims against Deputy Warden Stewart in her individual capacity. See Robinson v. Lambert, 753 F. App'x 777, 780 (11th Cir. 2018) ("For an excessive force claim, a pretrial detainee must show that the force used against him was objectively unreasonable." (citing Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015))).

In a companion Report and Recommendation, the Court recommends dismissal of Defendants White, Fuller, Pope, Bellamy, Robinson, and Mitchell, along with Defendant Stewart in her official capacity, and Plaintiff's claims for relation, due process, and failure to protect.

## II.    INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendant Stewart.  The United States Marshal shall mail a copy of the complaint, (doc. no. 1), and this Order by first-class mail and request that Defendant waive formal service of the summons.  Fed. R. Civ. P. 4(d).  Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver.  Fed. R. Civ. P.  4(d)(3).  However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case.  Fed. R. Civ. P. 4(m).  Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendant to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendant, or upon her defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court.  Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or his counsel.  Fed. R. Civ. P. 5; Loc. R. 5.1.  Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number.  Fed. R. Civ. P. 10(a).  Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendant.  Upon being given at least five days notice of the scheduled deposition date, Plaintiff

shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case. The defendant shall ensure Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendant, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he

should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Loc. R. 26.5.

Plaintiff must maintain a set of records for the case.  If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service.  "Failure to respond shall indicate that there is no opposition to a motion."  Loc. R. 7.5.  Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion.  Loc. R. 7.5, 56.1.  A failure to respond shall indicate that there is no opposition to the motion.  Loc. R. 7.5.  Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these:  any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against

Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 22nd day of July, 2022, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA