IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHINA LONON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-037 |
| | ) | |
| VERONICA STEWART, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, commenced the above-captioned civil rights case *pro se* and is proceeding *in forma pauperis* ("IFP"). Defendant filed a pre-answer motion to dismiss, (doc. no. 32). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**, (doc. no. 32), and this case be **DISMISSED** without prejudice, and **CLOSED**.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff initially named seven Defendants, and because he is proceeding IFP, the Court screened his complaint. (See doc. nos. 1, 6, 10.) Over objections from Plaintiff, (doc. no. 22), United States District Judge Dudley H. Bowen, Jr. dismissed Defendants White, Fuller, Pope, Bellamy, Robinson, and Mitchell, along with Plaintiff's official capacity claims for money damages against Defendant Stewart on September 6, 2022, (doc. no. 26.) The Court allowed Plaintiff's excessive force claim against Defendant Stewart to proceed. (Id.) Defendant Stewart moves to dismiss, arguing Plaintiff failed to exhaust his administrative remedies prior

to filing his complaint. (See doc. no. 32.) Plaintiff did not respond to the motion, and it is therefore unopposed pursuant to Local Rule 7.5.

The Complaint alleges that, on January 24, 2022, Plaintiff was sent from "Dining Hall # 1" to intake to have his beard shaved. (Doc. no. 1, at p. 5.) After Plaintiff's beard was shaved, Defendant Stewart approached Plaintiff with OC spray and instructed Plaintiff to remove his kufi cap. (Id. at 5, 7.) Plaintiff told Defendant Stewart, "You know you got to have a camera to spray me." (Id. at 7.) Defendant Stewart directed the other present inmates to go outside or to the lower intake area, leaving Plaintiff alone with Defendant Stewart and Defendant Bellamy. (Id.) After the other inmates dispersed from the area, Defendant Bellamy whispered into Defendant Stewart's ear. (Id.) Defendant Stewart then stated, "Here [is] my camera," and sprayed Plaintiff with OC spray repeatedly after Plaintiff removed his kufi cap and displayed no signs of aggression. (Id.)

Plaintiff was taken to Area E2 for a haircut. (Id.) After Plaintiff's haircut, Defendant Stewart falsely informed Defendant White that she sprayed Plaintiff with OC spray because he took off his clothes and tried to take a shower in front of everyone. (Id.) Plaintiff asks for compensatory and punitive damages in the amount of $130,000, and termination of Defendant White's employment. (Id. at 6.)

In support of the motion to dismiss, Defendant Stewart produced the declaration of Anntionette Johnson, the Chief Counselor and Grievance Coordinator at TSP. (See doc. no. 32-1 (Johnson Decl.).) As Chief Counselor, Ms. Johnson's responsibilities include ensuring compliance with the Georgia Department of Corrections' ("GDC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. at ¶¶ 2-3.) Ms. Johnson identified one grievance, no. 336315, Plaintiff filed at TSP possibly concerning the

events alleged in this lawsuit. (Id. at ¶¶ 11-13 & Exs. 3-4.) However, grievance no. 336315 does not mention Defendant Stewart pepper-spraying him. (Id.) The grievance only states that Sgt. Robinson threatened to pepper-spray him. (Id. at ¶ 12 & Ex. 3.)

## II.  DISCUSSION

### A.  The Legal Framework

Where, as here, a defendant files a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any

3

other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotations omitted). If a prisoner

4

fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### B.     The Administrative Grievance Procedure

The applicable administrative grievance procedure is GDOC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019. (Johnson Decl. ¶ 3 & Ex. 1.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C); (Johnson Decl. ¶ 5.) The administrative remedies procedure commences with filing the original grievance with a counselor or through a kiosk or tablet. PN 227.02 § IV(C)(1)(c-d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this

time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § IV(C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § IV(C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

### C. Plaintiff's Failure to Exhaust

Plaintiff's complaint was filed in the Southern District of Georgia on May 2, 2022. (Doc. no. 1.) Plaintiff's grievance history shows he filed one grievance, no. 336315, but this grievance neither names Defendant Stewart nor alleges she did anything to Plaintiff. (Johnson Decl. ¶¶ 12-14 & Ex. 3.) Plaintiff acknowledges in his complaint there is a grievance procedure and claims that he filed a grievance and an appeal, however, he did not provide any information about the grievance or outcome of his appeal. (Doc. no. 1, pp. 3-4.) Since Plaintiff did not respond to the motion to dismiss, there is no dispute that the only grievance he filed that could possibly relate to this lawsuit concerning a threat of pepper-spraying by an entirely different person, and not Defendant Stewart. Thus, under step one of Turner, the Court concludes Plaintiff filed no grievance with regard to the claim asserted against Defendant Stewart. See Turner, 541 F.3d at 1082. Because Plaintiff did not exhaust his administrative remedies with respect to his claims forming the basis of this lawsuit prior to initiating this case, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,'

a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**, (doc. no. 32), and this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 26th day of October, 2022, at Augusta, Georgia.

*[signature]*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA